IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| ANSEL ROJAS FUNDORA and VANESSA FIGUEIREDO, | § § § § § | |
| *Plaintiffs*, | § § | |
| vs. | § § | CIVIL ACTION NO. 7:23-cv-00015 |
| LARRY GARY TRUCKING, INC., and ROGER M. LEE, | § § § § | |
| *Defendants*. | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COME Plaintiffs, ANSEL ROJAS FUNDORA and VANESSA FIGUEIREDO, complaining of LARRY GARY TRUCKING, INC., and ROGER M. LEE, Defendants, and for cause of action shows unto the Court the following:

### I. PARTIES

1. Plaintiff ANSEL ROJAS FUNDORA is an individual citizen of the State of Texas.

2. Plaintiff VANESSA FIGUEIREDO is an individual citizen of the State of Florida.

3. Defendant, GARY TRUCKING, INC., is a motor carrier licensed by the United States Department of Transportation, Federal Motor Carrier Safety Administration to operate tractor trailers in the United States. It may be served with process by serving its registered agent for service, Joseph E. Rebman, 165 North Meramec Avenue, Suite 310, St. Louis, Missouri 63105.

4. Defendant, ROGER M. LEE, is citizen of the State of Missouri. LEE was operating a commercial motor vehicle on public roadway in Texas. Accordingly, pursuant to the

   Texas Transportation Code, LEE may be served with process by serving J. Bruce Bugg, Jr., Chairman, Texas Transportation Commission, 125 E. 11th Street, Austin, Texas 78701-2483.

5. Upon request and payment of $25, together with two (2) copies of the Citation and Complaint, the Chairman of the Texas Transportation Commission shall forward the Citation and Complaint to: ROGER M. LEE, 18356 Iris Road, Neosho, Missouri 64850.

## II. JURISDICTION AND VENUE

6. This Court has diversity jurisdiction because the matter in controversy exceeds $75,000.00 and the case is between citizens of different states. 28 U.S.C. § 1332.

7. Venue is proper in the Western District of Texas, Midland-Odessa Division, because a substantial part of the events and omissions giving rise to the claim occurred in Ector County, Texas. *See* 28 U.S.C. § 1391(b)(2).

## III. FACTS

8. Defendant LARRY GARY TRUCKING, INC., ("GARY TRUCKING" and/or "the company") is a motor carrier licensed by the Federal Motor Carrier Safety Administration (FMCSA).

9. In exchange for authority to operate 80,000-pound commercial motor vehicles on public roadways in the United States, GARY TRUCKING certified in writing and under oath to the FMCSA, that:

  A. it had in place a system for ensuring the overall compliance with the Federal Motor Carrier Safety Regulations ("FMCSR");

  B. it had a place a driver safety training/orientation program;

  C. it had in a system for overseeing driver qualification requirements;

    D.    it had in place policies and procedures consistent with FMCSA regulations governing driving and operational safety of motor vehicles, including drivers' hours-of-service and vehicle inspection, repair, and maintenance; and

    E.    it had in place a system for complying with the FMCSR governing alcohol and controlled substances testing requirements.

10. In exchange for authority to operate 80,000-pound commercial motor vehicles on public roadways in the United States, GARY TRUCKING also warranted to the FMCSA, that its drivers had knowledge of the FMCSR and of the traffic laws of the State of Texas.

11. GARY TRUCKING knew that if it broke these promises it made to the FMCSA and if it failed to implement the safety management systems necessary to ensure compliance with the FMCSR (including the qualification of drivers) there would naturally and probably be preventable crashes resulting in injury and damage.

12. Despite this knowledge, GARY TRUCKING repeatedly broke its promises to the FMCSA and violated the FMCSR.

13. GARY TRUCKING failed to ensure that its drivers had knowledge of the FMCSR and of the traffic laws of the State of Texas.

14. The FMCSA conducted multiple audits and inspections of GARY TRUCKING that reveal numerous violations of the FMCSR by GARY TRUCKING.

15. In the *last two years alone*, roadside inspections of GARY TRUCKING's commercial motor vehicles by the FMCSA have revealed that GARY TRUCKING's drivers have been cited multiple times for unsafe driving.

16. According to the FMCSA, in New Mexico, on November 4, 2020, one of the company's drivers violated federal regulations by unlawfully leaving a tractor trailer on the roadway.

17. According to the FMCSA, in New Mexico, on May 16, 2021, one of the company's drivers violated federal regulations by speeding 11-14 miles over the speed limit in a commercial motor vehicle.

18. According to the FMCSA, on July 29, 2021, in Georgia, one of the company's drivers violated federal regulations by failing to obey a traffic control device in a tractor trailer.

19. According to the FMCSA, on July 5, 2022, in South Carolina, one of the company's drivers violated federal regulations by illegally moving into the lane of another motorist while in a tractor trailer.

20. According to the FMCSA, on September 16, 2022, in Iowa, one of the company's drivers violated federal regulations by using a hand-held mobile device while operating a commercial motor vehicle.

21. According to the FMCSA, in the 2 years before the subject crash, GARY TRUCKING received 31 violations for failing to maintain its tractor trailers in accordance with the FMCSR.

22. In the 2 years before the subject crash, on these occasions, GARY TRUCKING was cited for failing to comply with the FMCSR as they pertain to the maintenance and repair of its *brakes*:

    A.  August 17, 2022, in New Mexico (involving the same vehicle in the subject crash);

    B.  February 17, 2022, in New Mexico;

    C.  February 16, 2022, in Montana;

    D.  February 8, 2022, in Alabama;

    E.  December 2, 2021, in Montana;

    F.  November 19, 2021, in Wyoming; and

  G. July 8, 2021, in Kansas.

23. At all times relevant to this lawsuit, ROGER M. LEE ("LEE") was acting within the course and scope of employment for GARY TRUCKING.

24. Upon information and belief, GARY TRUCKING violated the certified promises it made to the FMCSA in its application to operate commercial motor vehicles in the United States by failing to properly qualify LEE to drive and to train its driver.

25. Had GARY TRUCKING properly qualified LEE, the crash would not have occurred. That is, had GARY TRUCKING not qualified LEE to drive its tractor trailer, this crash would not have occurred.

26. Upon information and belief, GARY TRUCKING violated the certified promises it made to the FMCSA in its application to operate commercial motor vehicles in the United States by not adopting and enforcing policies and procedures to ensure that its drivers operated tractor trailers in a safe manner.

27. Upon information and belief, GARY TRUCKING violated the certified promises it made to the FMCSA in its application to operate commercial motor vehicles in the United States by failing to properly maintain its commercial motor vehicle.

28. GARY TRUCKING's vice-principals had actual, subjective awareness that the company's vehicle maintenance program was defective and that it created an extreme degree of risk, considering the probability and magnitude of the potential harm to the motoring public.

29. GARY TRUCKING's vice-principals had actual, subjective awareness that the company's driver safety training program was inadequate, creating an extreme degree of risk, considering the probability and magnitude of the potential harm to the motoring public.

30. Despite GARY TRUCKING's vice-principals' actual, subjective knowledge of the extreme degree of risk created by its inadequate driver safety training and qualification programs, GARY TRUCKING proceeded with conscious indifference to the rights, safety, and welfare of the motoring public by continuing to put unqualified, inadequately trained drivers behind the wheel.

31. GARY TRUCKING hired LEE, who was an unfit, unsafe, and untrained driver.

32. GARY TRUCKING did not adequately train and qualify LEE before putting him behind the wheel of a tractor-trailer.

33. The industry standard for motor carriers is to discourage tractor-trailer drivers from speeding and driving distracted.

34. The industry standard for motor carriers is to ensure, through training and monitoring, that their drivers know that speeding and driving distracted is dangerous and should be avoided.

35. GARY TRUCKING's vice-principals had actual, subjective awareness that speeding and driving distracted creates an extreme degree of risk, considering the probability and magnitude of the potential harm to others.

36. GARY TRUCKING's actual, subjective knowledge of the extreme degree of risk involved with speeding and distracted driving came, in part, from regulations, industry publications, and violations that GARY TRUCKING's drivers have received in the past.

37. Despite GARY TRUCKING's actual, subjective knowledge of the extreme degree of risk associated with not training its drivers, GARY TRUCKING acted with conscious indifference to the rights, safety, and welfare of others by putting drivers (including LEE)

behind the wheel without ensuring that the drivers understood the hazards associated with speeding and distracted driving.

38. The industry standard for motor carriers is to ensure that their drivers know never to speed and drive distracted.

39. This industry standards are set out in the model Commercial Driver License Manual, each state's commercial driver license manual, the United States Department of Transportation's Preventable Accident Manual, and numerous other publications.

40. Because of their weight and length, tractor trailers take more time than passenger vehicles to stop.

41. Despite GARY TRUCKING's actual, subjective knowledge of the extreme degree of risk associated with speeding, distracted driving, and improper maintenance of its commercial motor vehicles, GARY TRUCKING acted with conscious indifference to the rights, safety, and welfare of others by putting drivers (including LEE) behind the wheel without ensuring that he understood the dangers of speeding and distracted driving and that the tractor trailer was properly maintained.

42. On or about November 3, 2022, LEE was operating a tractor trailer for GARY TRUCKING in Ector County, Texas.

43. Due to GARY TRUCKING's inadequate training and qualification of LEE, combined with GARY TRUCKING's defective maintenance of the tractor trailer, LEE was unable to stop his tractor trailer in time to avoid hitting TWO vehicles in front of him.

44. Due to GARY TRUCKING's inadequate training and qualification, LEE did not know that it was dangerous to speed and drive distracted in a tractor-trailer.

45. Due to GARY TRUCKING's inadequate training and qualification, LEE failed to scan the

road ahead to appreciate the two vehicles in front of him and to avoid hitting them.

46. LEE departed from his lane of travel and he crashed with the vehicle that was immediately in front of him, yet he did not stop.

47. After LEE crashed with one vehicle, LEE did not stop; he proceeded in the tractor trailer and crashed also into Plaintiffs' vehicle.

48. Traffic, including Plaintiffs' vehicle, was visible to LEE, yet LEE failed to stop in time to avoid the collision with at least to vehicles in front of him.

49. Pleading in the alternative, if LEE did know that it was dangerous to speed and drive distracted and/or to operate the tractor trailer with defective brakes, then he acted with conscious indifference to the rights, safety, and welfare of Plaintiffs on November 3, 2022.

50. The crash caused Plaintiffs' severe and permanent bodily injuries.

51. The way the crash occurred (the speed, LEE's collision with more than one vehicle, and his departure from his lane of travel) is consistent with fatigue, violations of the hours-of-service regulations, distracted driving, and defective brakes.

52. Upon information and belief, LEE was distracted by an electronic device, fatigued, and/or operating the vehicle in violation of the hours-of-service regulations set out in Part 395 of the FMCSR.

53. Had GARY TRUCKING trained LEE on the dangers of driving while fatigued, the hours-of- service rules, and the hazards of distracted driving, the crash would not have occurred.

54. Had GARY TRUCKING implemented policies and procedures to monitor and audit drivers' hours-of- service, it would have caught LEE's unsafe driving practices. GARY TRUCKING then could have taken remedial action that would have prevented this crash.

55. Defendants are jointly responsible for the safe operation of the tractor-trailer at issue.

## IV. CAUSES OF ACTION

### NEGLIGENCE OF DEFENDANT LEE

56. Plaintiffs hereby incorporates paragraphs 7 - 55 as if fully set forth herein.

57. LEE had a duty to exercise the degree of care that a reasonably careful person would use to avoid harm to others under circumstances like those described herein.

58. Plaintiff's damages were proximately caused by LEE's breach and negligent disregard of said duty. The breach and negligent disregard of the duty consisted of, but is not limited to, the following acts and omissions:

   A. Operating a vehicle in careless manner and/or in violation of the Texas Transportation Code;

   B. Failing to stop in time to avoid hitting the traffic in front of him;

   C. Failing to keep a proper lookout for Plaintiffs' safety that would have been maintained by a person of ordinary prudence under the same or similar circumstances;

   D. Failing to maintain a clear and reasonable distance between GARY TRUCKING's tractor trailer and other traffic on the roadway, including Plaintiffs' motor vehicle;

   E. Failing to control the operation of his vehicle;

   F. Failing to avoid the crash in question;

   G. Failing to operate his vehicle in a safe and prudent manner;

   H. Failing to keep a proper lookout for other vehicles using the roadway;

   I. Driver inattention;

   J. Violating the terms and provisions of Texas Transportation Code, the Texas Driver's Handbook, and the Texas Commercial Motor Vehicle Drivers' Handbook;

   K. Driving while fatigued in violation of FMCSR 392.3;

   L. Driving in violation of the hours-of-service regulations set out in part 395 of the

        FMCSR;

M.    Driving while distracted;

N.    Not properly inspecting the brakes of the tractor trailer;

O.    Other acts of negligence and/or negligence *per se*; and

P.    Any other acts of negligence discovered and to be shown at the time of trial.

59. Each of the foregoing acts and omissions, whether taken singularly or in combination, constituted a breach of LEE's duty and was a proximate cause of the collision made the basis of this cause of action and the injuries and damages suffered by Plaintiffs.

60. The damages that Plaintiffs were caused are the types of harm that the above statutes are intended to prevent. Plaintiffs are members of the class of people these statutes were enacted to protect. Such violations of statutes, as identified herein amount to negligence *per se* and are a proximate cause of the occurrence in question.

61. Defendant LEE knew that his conduct (including driving while fatigued, violating the hours-of-service regulations, and/or distracted driving) would naturally and probably result in injury or damage. Nevertheless, LEE continued the conduct with malice or in reckless disregard of the consequences, from which malice may be inferred. Thus, LEE is liable for punitive damages.

## **NEGLIGENCE OF DEFENDANT GARY TRUCKING**

### **(Vicarious Liability)**

62. Plaintiffs hereby incorporates paragraphs 7 - 61 as if fully set forth herein.

63. At all times material hereto, LEE was in the course and scope of his employment for GARY TRUCKING.

64. Because LEE was acting in the course and scope of employment with GARY TRUCKING when the crash occurred, GARY TRUCKING is vicariously liable to Plaintiffs under the doctrine of *respondeat superior* and/or the statutory employment doctrine.

**(Direct Liability)**

65. Plaintiffs hereby incorporate paragraphs 7- 55 as if fully set forth herein.

66. GARY TRUCKING was negligent in hiring and/or qualifying LEE to operate its tractor trailer. This negligence was a proximate cause of the crash and Plaintiffs' damages.

67. GARY TRUCKING was negligent in failing to monitor, train, educate, direct, set policy, or give guidance to its drivers, including LEE, regarding:

    A.  The proper inspection and maintenance of the tractor trailer;

    B.  The safe operation of commercial motor vehicles;

    C.  Distracted driving;

    D.  Fatigue (including the dangers of fatigue, recognizing fatigue, and avoiding fatigue);

    E.  The hours-of-service rules set out in Part 395 of the FMCSR;

    F.  Seeing and hazard perception; and

    G.  Stopping distance.

68. GARY TRUCKING undertook to provide training to its drivers about the FMCSR and the traffic laws of the State of Texas. GARY TRUCKING was negligent in its undertaking and it neglected to provide its drivers (including LEE) with instruction about avoiding unprotected left turns. This negligence was a proximate cause of Plaintiffs' injuries and damages.

69. GARY TRUCKING certified to the FMCSA in writing and under oath, that it had a system for qualifying drivers. GARY TRUCKING violated this promise when it failed to properly qualify and/or hire LEE. This negligence was a proximate cause of Plaintiffs' injuries and damages.

70. GARY TRUCKING certified to the FMCSA in writing and under oath, that it had a driver training program when it applied to operate commercial motor vehicles in the United States. GARY TRUCKING violated this promise when it failed to train LEE. This negligence was a proximate cause of Plaintiffs' injuries and damages.

71. The FMCSA has provided guidance on what actions motor carriers must take to assure safe operations and compliance with the FMCSR. This guidance includes the CSA Safety Management Cycle, a document made available to GARY TRUCKING and other motor carriers licensed by the FMCSA. The CSA Safety Management Cycle discusses the necessity for policies, procedures, training, communication, monitoring, and meaningful action by motor carriers like GARY TRUCKING. GARY TRUCKING negligently failed to implement the FMCSA's guidance, as evidenced by its multiple violations and this crash.

72. The FMCSR also require training. Section 390.3(e)(2) requires, "Every driver and employee involved in motor carrier operations shall be instructed regarding, and shall comply with, all applicable regulations contained in this subchapter." FMCSR 392.1(a) requires, "Every motor carrier, its officers, agents, representatives, and employees responsible for the management, maintenance, operation, or driving of commercial motor vehicles, or the hiring, supervising, training, assigning, or dispatching of drivers, shall be instructed in and comply with the rules in this part." GARY TRUCKING was negligent and negligent *per se* in failing to train its drivers, including LEE, in violation of FMCSR

390.3(e)(2) and 392.1(a). Upon information and belief, GARY TRUCKING was negligent in:

A. Failing to establish and enforce policies and procedures regarding unsafe driving and the hours-of-service regulations;

B. Failing to audit drivers' logs, supporting documents, and hours-of-service;

C. Permitting violations of the FMCSR, including but not limited to the hours-of-service regulations set out in Part 395;

D. Aiding and abetting violations of the hours-of-service regulations set out in Part 395 of the FMCSR;

E. Failing to establish and enforce policies and procedures necessary to ensure driving safety, including policies p prohibiting unprotected u-turns and policies prohibiting turning in front of an oncoming vehicle doing so would require the oncoming vehicle to brake or swerve to avoid a collision, and;

F. Failing to take action to remedy the problems with its safety management systems (including training, policies, and procedures) after receiving multiple alerts from the FMCSA SMS system, and communications from the FMCSA regarding the safety issues at the company.

73. GARY TRUCKING was also negligent in its hiring and/or qualification of LEE to operate a commercial motor vehicle in the United States.

74. GARY TRUCKING had a duty dictated by the FMCSR to hire only qualified drivers to operate its tractor trailers.

75. GARY TRUCKING breached its duty to hire only qualified drivers to operate its tractor trailers. LEE's lack of experience, training, and education revealed him to be a dangerous driver for the purposes of operating commercial motor vehicles.

76. GARY TRUCKING's negligent qualification and/or hiring of LEE to operate a commercial motor vehicle was a proximate cause of injuries to Plaintiffs'.

77. GARY TRUCKING had a duty to ensure that its tractor trailers were properly maintained, inspected, and that they were safe. Based on information and belief, the tractor trailer that was

involved in this crash was not properly maintained and/or inspected and this was a proximate cause of injuries to Plaintiffs.

78. Each of the acts and omissions set out in the preceding paragraphs were direct and proximate causes of the collision and Plaintiffs' damages.

### (Gross Negligence)

79. Plaintiffs hereby incorporates paragraphs 7 – 78 as if fully set forth herein.

80. Vice-principals and managers of GARY TRUCKING knew that its acts and omissions would naturally and probably result in extreme harm, including injury and damages to others. Nevertheless, GARY TRUCKING continued the conduct with malice or in reckless disregard of the consequences, from which recklessness and/or malice may be inferred. Thus, GARY TRUCKING is liable for punitive damages.

### V. DAMAGES

81. As a direct and proximate result of the occurrence made the basis of this lawsuit, Plaintiffs was caused bodily injuries and incurred the following damages:

   A. Past medical expenses;

   B. Future medical expenses;

   C. Physical pain in the past;

   D. Physical pain that, in all reasonable probability, he will experience in the future;

   E. Physical impairment in the past;

   F. Physical impairment that, in all reasonable probability, will be endured in the future;

   G. Disfigurement in the past;

   H. Disfigurement that, in all reasonable probability, he will experience in the future;

   I. Mental anguish in the past;

J.      Mental anguish that, in all reasonable probability, he will experience in the future;

K.      Loss of earning capacity in the past;

L.      Loss of earning capacity that, in all reasonable probability, will be incurred in the future; and

M.     Punitive damages.

## VI. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully prays that upon a final hearing of this action, judgment will be entered for the Plaintiffs and against Defendants, jointly and severally, for damages in an amount exceeding the jurisdictional minimum of the Court, together with punitive damages, pre-judgment interest (from the date of injury through the date of judgment) at the maximum rate allowed by law, post-judgment interest at the legal rate, costs of court, and such other relief to which he may find himself entitled at law or in equity.

Respectfully submitted,

*/s/ Michael R. Cowen*
Michael R. Cowen
Bar No. 00795306
Sonia M. Rodriguez
Bar No. 24008466
COWEN | RODRIGUEZ | PEACOCK, P.C.
6243 IH-10 West, Suite 801
San Antonio, Texas 78201
Telephone: (210) 941-1301
Facsimile: (210) 880-9461
E-Mail for Service:
efilings@cowenlaw.com

**COUNSEL FOR PLAINTIFFS**

PLAINTIFFS DEMAND TRIAL BY JURY